SAMUELS, J.
The statutes of Virginia in force prior to the 1st of July 1850, afforded to a judgment creditor the means of obtaining satisfaction of his claim out of the estate, real, personal or mixed, of the judgment debtor. On and after the day named, when the Code of Virginia went into operation, whilst the creditor retained his right to satisfaction,' the process by which he was to attain it was greatly changed by the Code. It is only necessary in this case to advert to the rights and remedies of the creditor in regard to debts due from other persons to the judgment debtor, inasmuch as the subject in controversy here is a debt due from J. J. Daly to Richard H. Daly, the judgment debtor. Under the law as it stood before July 1, 1850, a subject of this nature was reached by causing the debtor 'to be arrested under a writ of capias ad satisfac-iendum, and committed to jail, there to remain until discharged under the insolvent laws. Before such debtor could be so discharged, he was required to surrender every thing of value (with a few specified exceptions) owned by him, including debts due to him, to be applied in a designated mode to the satisfaction of the creditor’s demand. If the debtor failed to surrender his estate as the law required, still, .by mere operation of law he was divested of all title thereto, and the estate applied, in a way pointed out, to discharge the debt. Section 2, ch. 188, abolishes the writ of ca. sa. in all cases except those provided for in l 1, of which the claim before us is notone.
It was obviously the purpose of the general assembly to save to the creditor the rights which he might have acquired if the former laws had continued to exist, and to give *629 him a -new and adequate remedy to enforce his rights. The revisors in their report to the ^general assembly, p. 926, say, that “This chapter (188) is framed to provide for the creditor (in place of taking the debtor under a capias ad sat-isfaciendum, and compelling him to take the oath of insolvency) as efficient remedies (in cases not provided for by the 1st and 2d sections) against all estate not subjected to other process, as he now has when the debtor is discharged by taking the oath of insolvency. ” The revisors accordingly reported a section of the statute giving the creditor the remedy indicated by them; and the general assembly in substance adopted the suggestion, which is found embodied in § 3, ch. 188.- This section gives to the fi. fa. a capacity to bind mere choses in- action, by making it a lien thereon, with some exceptions, not material in this case. Section 4 prolongs the lien beyond the return day of fi. fa. ; it is directed to cease ‘ ‘whenever the right of the judgment creditor to levy the fi. fa. under which the lien arises, or to levy a new execution on his judgment, ceases or is suspended by a forthcoming bond being given and forfeited, or by super-sedeas or other legal process.” Section 17 provides for repeated executions, without impairing the lien attaching under the first execution.
It clearly appears in the section last cited, that the legislature intended the lien to continue after the return day of the fi. fa.; otherwise, it would have been useless to provide for preserving a lien if the lien should be regarded as already lost, booking as well to the intention as to the plain words of the statute, I am of opinion that the lien of Puryear’s fi. fa. was in full force when he filed his suggestions under section 10, to make it productive. This lien commenced December 10th, 1850, the day on which the fi. fa. was delivered to the sheriil.
The suit brought by Taylor against Richard H. Daly was brought 25th of October 1851; and on the same day he sued out an attachment under the statute, Code *of Virginia, ch. 151, § 1. This attachment was served on J. J. Daly as garnishee October 27, 1851. Thus the liens of Puryear’s fi. fa. and Taylor’s attachment are brought in conflict. These liens are both given by statute, and are merely legal. It is perfectly obvious that Puryear’s lien, being first in point of time, must take precedence of Taylor’s. See Erskine v. Staley, 12 Leigh 406.
I am of opinion to reverse the judgment in favor of Taylor, and to render judgment in favor of Puryear.
The other juges concurred in the opinion of Samuels, J.
Judgment reversed.